| CIVIL ACTION COVER SHEET | DOCKET NUMBER 16CV | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| | | COUNTY Hampshire |
|---|---|---|
| **PLAINTIFF(S):** Regina Shea-Sullivan | | |
| **ADDRESS:** 563 New Ludlow Road, Chicopee, MA | | |
| | **DEFENDANT(S):** Town of Southampton, Select Board and Edward Cauley | |

| | | |
|---|---|---|
| **ATTORNEY:** Christine M. Pikula | **ADDRESS:** 210 College Highway Southampton, MA and 6 Jonathan Judd Circle | |
| **ADDRESS:** 1350 Main Street- Suite 312 | Southampton, MA | |
| Springfield, MA 01103 | | |

| BBO: | 684292 |
|---|---|

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. : AA1 | TYPE OF ACTION (specify) Discrimination | TRACK A | HAS A JURY CLAIM BEEN MADE? ☒ YES ☐ NO |
|---|---|---|---|

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

| | |
|---|---|
| A. Documented medical expenses to date: | |
| 1. Total hospital expenses | $ 1000 + |
| 2. Total doctor expenses | HAMPSHIRE SUPERIOR COURT $ |
| 3. Total chiropractic expenses | $ |
| 4. Total physical therapy expenses | $ |
| 5. Total other expenses (describe below) | AUG 1 8 2016   Subtotal (A): $ |
| B. Documented lost wages and compensation to date | $ 50,000.00 |
| C. Documented property damages to date | HARRY JEKANOWSKI, JR. $ |
| D. Reasonably anticipated future medical and hospital expenses | CLERK/MAGISTRATE $ 750,000.00 |
| E. Reasonably anticipated lost wages | $ |
| F. Other documented Items of damages (describe below) | $ |

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$ 801,000 00+

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

TOTAL: $

**Signature of Attorney/Pro Se Plaintiff:** X                    Date: 8/18/16

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X                    Date: 8/18/16

COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.:   **16CV**

REGINA SHEA- SULLIVAN
PLAINTIFF

v.

TOWN OF SOUTHAMPTON,
SELECT BOARD and EDWARD CAULEY

DEFENDANTS

**VERIFIED**

**COMPLAINT AND DEMAND FOR**

**JURY TRIAL**

HAMPSHIRE SUPERIOR COURT

AUG 1 8 2016

HARRY JEKANOWSKI
CLERK / MAGIS

<u>PARTIES</u>

1. The Plaintiff, Regina Shea-Sullivan ("Plaintiff") is natural person who resides at 563 New Ludlow Road, Chicopee, Hampden County, Massachusetts 01020, and files this action in Hampshire County as she was formerly employed by the Town of Southampton all times during the relevant facts to this case.

2. The Town of Southampton ("Town") is a municipal corporation with offices located at 210 College Highway, Southampton, Hampshire County, Massachusetts 01073.

3. The Defendant Edward Cauley ("Cauley") is a natural person who resides at 6 Jonathan Judd Circle, Southampton, Hampshire County, Massachusetts 01073 and at all times material hereto served as an elected member of the Town Select Board ("Board") and sued in his official and individual capacity.

4. The Town Select Board consists of Five (5) members. Under the Town by-laws the Select Board act as agents and officers of the Town appoint and or employ the various officers and boards, and fix the compensation, including an annual appointment of an Administrative Assistant who reports to the Board. The Select Board's principal place of business is located at 210 College Highway, Southampton, Hampshire County, Massachusetts 01073.

5. Cauley also served as the Town Highway Superintendent until his retirement from that position with the Town. His long employment history and vital positions have empowered Cauley by his importance and significant influence over other Town employees as well as residents.

1

## FACTUAL BACKGROUND

6. This Complaint contains a summary of the history of Plaintiff's employment with the Town of Southampton and the improper treatment she experienced as a result of sexual harassment as well as her actions as a whistleblower.

7. Plaintiff commenced employment as an Administrative Assistant with the Town of Southampton on or about May 1, 2006. In addition, during 2007, she began working each Friday for the Highway Department as well as the Water Department, under the supervision of the Highway Superintendent, Edward Cauley. In approximately September 2008, she also began to provide clerical duties to the Zoning Board of Appeals (ZBA) and continued such clerical duties for ZBA until she took maternity leave in August of 2009.

8. Plaintiff remained employed in the position of Administrative Assistant until promoted to the position of Interim Town Administrator effective August 1, 2011. As Interim Town Administrator she reported directly to the Select Board. The next month, in September 2011, she stopped working on Fridays for Water and Highway Departments as her work as Interim Town Administrator involved Fridays.

9. In the course of her employment she has been subjected to unwanted sexual advances and other verbal or physical conduct of a sexual nature by Mr. Cauley while he was working in his capacity as Highway Supervisor and Clerk of Water Commission for Water Department.

10. Plaintiff's rejection of such advances has been the illegal basis for decisions with regard to Plaintiff's employment, and such advances and conduct has had the purpose and effect of unreasonably interfering with her work performance by creating an intimidating, hostile, humiliating and sexually offensive work environment.

11. In Fall 2008 the first incident involved where Mr. Cauley requested Plaintiff's assistance with regard to a computer problem. Plaintiff went over to his office at the Highway Department. She fixed his computer and he said "Let's go for a ride, I will show you the Tighe-Carmody Reservoir." While they were driving, he inappropriately rubbed Plaintiff's upper left thigh. She pushed his hand away.

12. In Spring 2010 the second incident occurred after Cauley called then Town Administrator, Diana Schindler, and again stated he had a computer problem, he asked her to send Plaintiff over to fix his computer. Plaintiff went over to his office and fixed the computer. As Plaintiff was leaving, he grabbed her with both

2

arms and attempted to kiss Plaintiff. She pushed him away and told him "Ed I am married, where is this coming from?"

13. In Fall 2010, before moving the Town Offices from 8 East Street to 210 College Highway, while she was alone in the office on a Friday. Cauley called Plaintiff and offered her a toy train table for her son. Plaintiff asked Cauley to bring it to the Town Hall, and he agreed to bring it to Town Hall at 12:00 p.m. Twenty minutes before 12:00 p.m. he called Plaintiff and said it would be better if she came to pick it up at his house. Plaintiff went to his house, and he put the train table in the car and then asked her to come inside his house. She went inside, they talked for a few minutes then as she was going to leave, he then attempted to kiss Plaintiff again, even more aggressively than the first time. Plaintiff turned her head to block him from kissing her, pulled away and tried to leave the house. However, he put his hand on the door jam, blocking her, and told her he can't help it, he said he is an old man and he was not going to hurt her, he said he cared about her and then told her she should leave. Plaintiff reported this incident to the Police Chief Silvernail, who was also a member of the Town Personnel Policy Procedures Board at that time. The Police Chief told Plaintiff he had to report it, but she pleaded with him not to do so, fearing retribution. Chief Silvernail agreed not to report it if she agreed that she would tell Ed Cauley, if he did touch her again, she would file sexual harassment charges. Plaintiff told Ed Cauley this the next day. In reply, Ed said, "Because you talk to me."

14. In the Spring of 2011, again on a Friday when the town hall was closed, Ed Cauley came into the Select Board office and said, "Let's go for a ride. I am going to show you the Town's water pump". Plaintiff declined. He repeatedly said, "Let's go for a ride". She declined repeatedly, and then ultimately agreed, feeling she had no choice. As she was walking out the door, he grabbed her shoulders from behind and rubbed them. She then turned around and said, "Don't touch me!", and told him she was not going with him. He said, "You act like I am going to hurt you, let's go". She finally relented. He then drove her to a secluded area in a field where no one was around and he said, "Look around. No one will be able to hear you out here". He then drove Plaintiff back.

15. These incidents were severely abusive and carried on over a period of time. This harassment was carried out by Mr. Cauley, who was then Highway Superintendent; Water Commissioner and member of the Personnel Policy Procedure Board and one of the most powerful people in Town. He had supervised Plaintiff at the time she worked in those departments. Thereafter, he became a member of the Select Board in May 2012 and had a direct supervisory relationship over Plaintiff in her position as Interim Town Administrator.

16. Prior to that time, from the time she began her employment, Plaintiff had adequately performed the duties of her job and received positive performance evaluations from the Select Board.

17. She continued to work in the capacity as Interim Town Administrator since August 2011 despite the fact that she did not meet the minimum requirement contained in the job description that the Town Administrator must hold a Bachelor's degree. She was re-appointed as Interim TA in 12 week intervals.

18. In fact, at the April 10, 2012 meeting, the Select Board discussed changing the education requirement, and all board members agreed to change the requirement of a Bachelor's degree to a "suggestion" rather than a "requirement", which would allow Plaintiff to be eligible for the Town Administrator, job on a permanent basis.

19. Plaintiff was tracking in that direction until May 2012 when Cauley was elected to the Select Board. Thereafter, the Select Board has failed to provide Plaintiff with a performance review. Cauley specifically refused to carry out a performance review, at the October 2, 2012 Select Board Meeting.

20. In addition, Plaintiff has been the subject to adverse treatment and treated differently from other employees who are similarly-situated but not women. For example, the Select Board agreed to pay the new interim fire chief (a male) a substantial raise on July 10, 2012. However, the Select Board refused, on July 17, 2012, to increase Plaintiff's salary despite the fact that she had been working two positions (interim town administrator and administrative assistant) every week without an assistant.  At that meeting, Cauley told the Board that Plaintiff "did not deserve a raise" and Select Board member David McDougall told Plaintiff to "put on her big girl pants." Although they denied her the raise, the Board did approve a temporary employee. The position was subsequently filled, for a short period of time, but proper procedures were not followed.

21. Under the circumstances, Plaintiff's employer knew or should have known of the harassment and failed to take prompt remedial action.

22. In addition, Plaintiff has been discriminated against by Mr. Cauley in retaliation for opposing his sexual harassment and complaints about it. His actions toward Plaintiff, as previously described, have been coercive, intimidating, and threatening to her, and interfered with Plaintiff's exercise and enjoyment of her rights granted or protected by the state and federal anti-discrimination laws.

23. For example, in December 2012, when the board voted and approved a job description for Town Administrator, Cauley challenged the fact that the job description did not require a Bachelor's degree, but only suggested it as a qualification, not as a requirement. However, at the same time, he was strongly in favor of removing the Bachelor's degree requirement for the job description

for Fire Chief. Additionally, Cauley continually enters Plaintiff's office to yell at her, slam the door, or starts arguments with her, all in an attempt to intimidate her.

24. Additionally, Plaintiff applied for the position of permanent Town Administrator in early 2013. She also drafted a "no bullying, no harassment, no violence policy" for the Select Board's consideration for Town Employees. Cauley publically stated that the policy was not necessary and the policy was never voted on by the Board. Cauley then attempted to create a screening committee for the position of Town Administrator despite the failure to have Select Board approval and without any posting, which has always been past practice.

25. Subsequently, at the March 5, 2013 meeting, Cauley convinced the board to create a Screening Committee and attempted to pack it with his friends, including but not limited to John Martin, Vicki Moro and Donna Whitely, who would be against Plaintiff's application. This was done without following the past practice of posting the screening committee for Town resident participation. For example, in contrast, a Screening Committee was created in May of 2013 for the Fire Chief position and was posted. At the same meeting, Donna Whitely, who is Town Treasurer/Collector and a friend of Edward Cauley, falsely accused Plaintiff of not submitting time sheets in an attempt to wrongfully discredit Plaintiff's job performance. At the March 12, 2013 meeting, the Select Board was informed that Plaintiff had received 5 letters of recommendation on behalf of her appointment to the position from Town residents.

26. The Screening Committee reduced the candidates to a final 5. However, Select Board member and Screening committee member Jackie Sears, at the April 16, 2013 meeting, complained that Plaintiff was not one of the 5 candidates and that the process had not been fair. As a result, Plaintiff was told that she would be granted a "courtesy" interview. After the meeting, two Select Board members asked Plaintiff to take her name out of consideration, but Plaintiff refused. Select Board member Roy asked why Plaintiff would "want to stay here while all of this is happening"? Plaintiff said, "Why are you allowing this to happen"? Plaintiff was so mad she suggested that they lay her off. Chairman Phelan said he would consider laying Plaintiff off if she was serious.   Plaintiff indicated that she was very emotional at the time and would get back to him to let him know. Plaintiff called him the next day and told him she was not leaving. Subsequently the Finance Committee, chaired by John Martin, failed to include Plaintiff in the Town budget preparation process. As the Town Administrator has a direct role in the budget process.   She was involved in prior year. Despite this fact, Plaintiff has been accused of failing to properly include warrant articles for the budget.

27. Plaintiff has also been falsely accused of slowing down the hiring process for Town Administrator. She has been falsely accused of failing to post a job for

Cauley's Highway Superintendent position even though it had not been approved for posting. In addition, Select Board Member Cauley's treatment of Plaintiff has caused tension with co-workers including long-time friends of Cauley as well as new employees. This is as a result of Cauley's defamatory statements and instigating false allegations against Plaintiff. Another example, he has referred to Plaintiff to third persons as a "fucking liar".

28. On August 29, 2013, a meeting where Plaintiff was not present, the Select Board violated the Massachusetts Open Meeting Law by voting to change the job description for Town Administrator to require a Bachelor's degree and appointing a new screening committee despite the fact that the item was not on the agenda. The next day, the Chairman of the Finance Committee, John Martin, indicated the candidate chosen by the Board for the position of Town Administrator, had declined the job and as Town Administrator Screening Committee Chair, he was charged with changing the job description to require a Bachelor's degree and to post the job. The Plaintiff protested about the Open Meeting Law Violation in an email on September 3, 2013 and asked the Select Board to reconsider seeking residents for the committee since most of the members of the screening committee had done nothing but discredit her reputation.

29. The Select Board admitted they violated the Open Meeting Law and tried to cure the violation by at their meeting, September 10, 2013. However, due to a tie vote, the change in the job description for Town Administrator did not pass. Then, Cauley falsely accused Plaintiff of improperly changing the job description to fit her own credentials.

30. At this meeting Plaintiff asked the Select Board why they were not following the same process for Town Administrator as they were for the positions of Fire Chief and Highway Superintendent, as was normal practice, by seeking residents to serve on the screening committee. The chair indicated that he would check with the Town's lawyer. Plaintiff was informed that Town Counsel advised that posting to seek town residents was not a legal requirement. As such, the Select Board arbitrarily treated the filling of the jobs differently, by excluding residents for the position of Town Administrator, in an effort to exclude Plaintiff from becoming a finalist. She asked the Select Board chairman to reconsider their failure to follow past practice, but the select board has failed to so reconsider.

31. In September 2013, the Assistant Treasurer, the Chairman of the Finance Committee and the Board of Health Chair have requested personal email addresses for the Select Board members in an effort to communicate with them by circumventing Plaintiff's authority and undermining her duties with regard to receiving and distributing emails to the public officials.

32. On September 13, 2013, she complained about the hostile work environment to Select Board member Liz Moulton, telling her that the atmosphere in the Town Hall was "toxic" and that the Select Board was aware of it; they are responsible; and by doing nothing to stop it, the Select Board is enabling the toxic atmosphere to continue. She acknowledged that she could feel the tension in Town Hall. Plaintiff told her the inaction of the Select Board on topics such as projects where Plaintiff seeks direction is falsely leaving the impression that Plaintiff is failing to communicate with them.   In addition, Cauley along with his co-conspirators who are attempting to remove Plaintiff from office, are unduly causing Plaintiff and her activities to be the subject of undue surveillance in an attempt to find grounds for discipline.

33. On September 17, 2013, Town Treasurer/Collector, a friend of Cauley, sent Plaintiff an email requesting the Town Administrator posting be placed on the town's web page. However, the posting she provided was different than the approved posting, as it failed to have a closing date for applications or a salary range as required by town by-law.   Finance Committee/Town Administrator Screening Committee chairman John Martin then posted the job on Craig's list and other job listings despite the violation.

34. On September 24, 2013, a renewal of Plaintiff's 12 week appointment as Interim Town Administrator was submitted to the Select Board and Mr. Cauley voted against renewal.  Plaintiff again brought up her complaints concerning a part-time employee receiving employment benefits in violation of Town personnel policy. No action was taken by Mr. Cauley in response to Plaintiff's instead Mr. Cauley brought up complaints that were focused against Plaintiff from the Personnel Policy Procedures Board.  Such actions by Cauley were retaliation for her complaints and her refusal to submit to his sexual advances, against Plaintiff, in his individual and official capacities.

35. On September 26, 2013, Plaintiff requested copies of the letters recommending her to be Town Administrator that were submitted to the screening committee and that they be placed in her personnel file. To this day, she has not received these letters or any confirmation that the letters have been placed in her folder. She has been informed there are 6 or 7 such letters. Despite her application, letters of support, and satisfactory work performance in the position, she did not receive an interview.

36. On September 30, 2013, Plaintiff submitted a written letter of complaint against Cauley. Since that time, Cauley continued his retaliation against Plaintiff. For example, on October 1, 2013, Cauley came in to deliver documents and when Plaintiff reached out her hand to receive them he instead threw them on the desk. Select Board member Sears has asked the Select Board Chair to keep Ed Cauley away from Plaintiff's office. However, Chair Phelan said they cannot stop him and Ed will do what he wants.

37. On October 8, 2013, Plaintiff's complaint was the subject of an executive session and she was not allowed to stay for the meeting. Ed Cauley and his Attorney, as well as Town Counsel attended.

38. The disparate treatment and harassment continued thereafter by Cauley and others acting in conjunction with Cauley. For example, at the November 26, 2013 meeting, Select Board member Dave McDougall requested Plaintiff's performance be reviewed for an alleged failure to draft and send out a memo instructing all departments to hand deliver documents to the Town Accountant office. On the other hand, the Select Board has failed to take any action or request any review concerning numerous failures by other employees paying improper amounts in paychecks, and not paying employees when they should have been paid and incorrectly allocating for school retirement.

39. On October 15, 2013, the Select Board received anonymous letters from other employees concerning the toxic atmosphere in Town Hall who were worried about retaliation if their names were disclosed. In fact, on October 16, 2013, the Town Accountant submitted a public records request for copies of those letters and to begin a witch hunt to track down the anonymous writers. The Select Board did not allow any of the concerns raised in the letters to be publically aired. However, the Select Board allowed the Chair of the Board of Public Health, as well as the Town Accountant and Finance Committee chair to make false and defamatory statements about Plaintiff's job performance including but limited to falsely blaming Plaintiff for fluctuating temperatures in Town Offices, improperly sending emails and improperly maintain the email system as well as "hiding" information from Town officials. Police Chief Silvernail attempted to bring up complaints he had with other persons. However, the Select Board stopped him from naming names, although they allowed others to use Plaintiff's name.

40. Select Board members Phelan and Sears requested that the topic of hiring an outside agency to review the applications for Town Administrator, be placed on the Select Board agenda for the On October 22, 2013. When Cauley saw this, he became irate and stormed out of the meeting. This meeting is recorded and Cauley blamed Plaintiff for not posting the job. The board voted against considering the outside agency 4-1. (Sears was the only nay vote)

41. Throughout her employment Plaintiff has taken her job seriously and has endeavored to evenly administer the duties of her office. As such, she has brought to the attention of the Select Board about the following matters which are in violation of law:

      a. The failure to pay wages to Joe Muse, a former employee, for hours worked as well as accrued vacation time. Ed Cauley came to the Select Board office on December 16, 2011 and yelled at her for authorizing such payment as she had signed the timesheet to

authorize payment. On December 19, 2011, she sent an email regarding Joe Muse and the vote of the Personnel Policy Procedures Board, not to approve, seeking clarification. On January 18, 2012 she informed the Select Board about the non-payment and the threat of litigation. On May 16, 2012, the Attorney General's Office informed her that Joe Muse filed a complaint for non-payment of wages and vacation hours. Ed Cauley told her to inform the AG office that Muse was not entitled to be paid. She refused. Town Counsel advised the Select Board, they were required to process payment of the wages and issued a check. On June 19, 2012, the Select Board voted to pay Joe Muse.

b. In February 2012, she reported to Finance Committee Member, John Martin, about the use of private emails to circumvent the public records law as well as the Open Meeting Law in discussing the performance of the Town Accountant.

c. As part of her duties she reported that 1 part time employee was receiving benefits when not entitled. It took several months of bringing this to their attention before they took action.

d. She reported about the failure to follow procurement laws with regard to the Camp Jahn Road property.

e. She reported and complained about employees being hired without any posting or completion of personnel change forms. (PCF).

f. The adverse employment actions of refusing to hire her for the position of Town Administrator, which she had been performing adequately over the past years, and refusing to interview her for the position, refusing to provide her a raise, are also causally related to her refusal to go along with these violations.

42. After filing a complaint with the Town and retaining a lawyer to represent her, the Town hired an investigator to look into the complaints. Plaintiff met with Investigator Attorney Corrine Hood-Greene December 6, 2013 and March 6, 2014.

43. The Plaintiff explained to the investigator the obvious connection between Cauley and his group of friends who were carrying out retaliation against Plaintiff. The retaliation did not just occur after the filing of the complaint; retaliation was ongoing by Cauley and his cronies after the Plaintiff denied Cauley's sexual advances. Retaliation continued after the filing of the first complaint. Thereafter, Cauley's friends became more hostile towards Plaintiff.

44. Since filing a complaint against Edward Cauley, Plaintiff has been continuously discriminated against and suffered retaliation and humiliation by numerous Town of Southampton employees after she provided an interview to the Investigator looking into her earlier complaints.

45. On December 10, 2013, she was told by the chair of the Select Board that she cannot perform certain duties of her job without his permission first, including but not limited to requesting documents from other departments, seeking advice from town counsel, and public records requests.

46. On December 11, 2013, the Select Board chose Lyn Simmons to fill the position as town administrator. Lynn Simmons' only municipal experience was 2 years as administrative assistant to the mayor of Northampton. Despite acting in this capacity, this is the second time Plaintiff was bypassed for this job position.

47. On December 18, 2013, Plaintiff was singled out again. Michael Phelan, Chair of the Select Board indicated that the Board was requiring that she record her time in and time out on time sheets. Plaintiff reminded him that she is a salaried employee not hourly. She indicated that no other salaried employee was required to record his or her time in and time out. Specifically, the entire Highway Department is, hourly paid and required to keep time, however they do not record their time. Chief Silvernail is a salaried employee and writes salary across his timesheet, and Ed Cauley wrote the number of hours he worked rather than his time.  The Building inspector puts 7:00 to 1:00 on his timesheet but is falsifying his records due to the fact he is only in the building from 6:30am – 9:00am. The town accountant writes 8:30-4:00 and tallies that as 8 hours, when it is only 7.5 hours. Yet Plaintiff is the only one who was singled out. Chairperson Phelan's response to Plaintiff when she brought this to his attention was that "he doesn't have control over the highway department and the chief has a gun."

48. Joyce Skypeck, the assistant accountant, continued to harass Plaintiff over the maintenance of the town website, even though Plaintiff maintained the website with another person. Skypeck sent Plaintiff rude emails when Plaintiff was not able to update the website immediately when asked.

49. On December 18, 2014, during executive session regarding negotiations with the new town administrator, according to Michael Phelan, the Select Board agreed to give her a salary of between $56,000 and $58,000, but yet again Plaintiff was only granted $45,000 to work in an acting capacity. Michael Phelan reminded Ed Cauley and Liz Moulton, that she has never been a Town Administrator. However, Lyn Simmons was offered $60,000 a year, 20 vacation days, 3 personal days, 6 sick days, and a $45.00 a month stipend for her cell phone bill.

50. Chair of the Select Board Phelan indicated to Plaintiff that he is very aware of the hostile environment at Town Hall and stated he cannot get out soon enough; his term expired in May 2014. Plaintiff thanked him for his continual support. He also mentioned how people are portraying Plaintiff to be this evil person and he doesn't know why. Plaintiff replied they think she is evil because she follows the rules and call them out on their corruptness.

51. On January 21, 2014, Lyn Simmons turned down the job as town administrator. She indicated in a newspaper interview that it was because she could not take the job and stated "The benefits would be a reduction, and I couldn't make that work for me." However, the Select Board blamed Plaintiff without any reason as the cause of her not taking the job.

52. This same day, the Select Board agreed to choose Heather Budrewicz to be the new town administrator. This was the third time Plaintiff was bypassed for the job. Heather's only municipal experience was two years as assistant city clerk. Moreover, they did not rank the three initial candidates for the position and arbitrarily chose Ms. Budrewicz. James Palermo, Screening Committee member who was strongly opposed to hiring Heather expressed opposition publicly to the Select Board at meeting and urged the board to repost the job.

53. On January 28, 2014 Budrewicz acknowledged to Phelan, Sears and Plaintiff that she had never been to a town meeting, a town caucus or a town election. Moreover, she had never drafted town meeting warrants, caucus warrants or town election warrants. She also acknowledged to Plaintiff and Chief Silvernail that she did not know much about municipal budgets but would learn. Plaintiff had experience in all of these portions of the job. However, Plaintiff was demoted to Administrative Assistant.

54. On March 25, 2014, Plaintiff was out sick and notified Ms. Budrewicz as a courtesy, by sending a text message to Ms. Budrewicz letting her know she would not be in. Ms. Budrewicz demanded to know her reason for being out, Plaintiff did not respond. On March 26, 2014, Ms. Budrewicz again demanded to know why Plaintiff was out, and accused her of not showing up for work, even though Plaintiff had a legitimate sick day. Moreover, it is town policy that a doctor's note is not required until after being absent three consecutive days, and Ms. Budrewicz is not Plaintiff's supervisor.

55. As a result of the discrimination and ongoing retaliation, Plaintiff was forced to resign from her job and the retaliation and harassment continued. After Plaintiff resigned, she was retaliated against again, this time by the new TA, Heather Budrewicz.

56. Specifically, On April 10, 2014 at 6:02 P.M. Plaintiff received a telephone call from the building inspector, Richard Oleksak. When Plaintiff answered the call, a woman on the phone stated "according to her records the phone that you are

talking on is the property of the town and you need to return it". Plaintiff
questioned what she was saying and she repeated it again. Plaintiff told her
that she was using her own phone and asked if this was Heather to which she
answered yes and hung up. Plaintiff thought the background noise of the call
sounded as if Heather was in a bar or lounge. Plaintiff called back to ask
additional questions, however no one picked up. Plaintiff later confirmed
Heather was at Paisano's with the building inspector, Bianca Halket and Adam
Kinney through the Assessor, Lori Stewart, as they were having a going away
party for Halket and Stewart was invited.

57. Plaintiff suffered adverse treatment by her employer and the employer's action
was taken under circumstances which give rise to an inference that the reason
for the action was based on her age or gender, sexual harassment, or
retaliation for complaining and the employer knew or should have been aware
of the discrimination yet failed to remedy the wrongdoing.

58. As a result, Plaintiff has suffered and continues to suffer damages because of
her age, gender and sexual harassment culminating in her demotion and by
pass for promotion, damage to her professional reputation, emotional distress
and loss of earning capacity as a result of the discrimination and interference
with her rights as an employee in a humiliating, demeaning and stigmatizing
manner.

<u>COUNT I</u>
Employment Discrimination and Harassment
(Violation of Chapter 151B against all Defendants)

59. Plaintiff hereby repeats and restates the allegations in paragraphs 1 through 56
above as if fully and completely set forth herein.

60. Defendants, in violation of Massachusetts General Laws c. 151B § 4(1); 4(4);
4(4A) and 4(5) discriminated against Plaintiff in her employment based on sex,
and age, in violation of Massachusetts General Laws Chapter 151B §4 arising
from the imposition of adverse terms and conditions of employment, and/or
from disparate treatment compared to other, younger, male employees. Plaintiff
filed a Complaint with MCAD on March 31, 2014 and requested permission by
MCAD to withdraw her complaint and pursue a private civil action in
accordance with G.L. c. 151B.  More than 90 days has passed since the
original filing. Said permission will be automatically granted.

61. Defendants directly interfered with Plaintiffs exercise or enjoyment of the right
to a non-discriminatory, harassment free, workplace.

12

62. Moreover, the circumstances show that Defendants, supervisors agents and employees had the authority or the duty to act on behalf of the Town and such action or failure to act implicated rights under the Anti-discrimination statute; and the evidence articulated in this complaint shows that the action or failure to act was in deliberate disregard of the Plaintiff's rights allowing the inference to be drawn that there was intent to discriminate or interfere with Plaintiffs exercise of rights.

63. Further, by his actions and failure to act, Cauley did aid, abet, incite, compel or coerce the doing of any of the acts forbidden under chapter 151B or to attempt to do so by encouraging and fostering a work environment hostile to women, handicapped, older workers and their supporters.

64. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff has suffered extreme mental anguish, severe emotional anxiety, distress, loss of her employment, loss of earnings and benefits, loss of earning capacity, concern about her employment and future employability, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT TWO
### Intentional Infliction of Emotional Distress
### (Against Defendant Edward Cauley individually)

65. The Plaintiff hereby incorporates Paragraphs 1-63 above as if fully statedherein.

66. At all times relevant hereto, the Defendant, by and through conduct individually, and through other agents, officials, officers and employees, engaged in a pattern of extreme, reckless or outrageous conduct, intended to cause emotional distress, or which Defendant knew or should have known would cause emotional distress, which was so severe and of a nature that no reasonable person could be expected to endure.

67. As a result of the intentional, or otherwise wrongful conduct of the Defendants, the Plaintiff, has been caused to suffer emotional distress and has incurred substantial and continuing damages, including those detailed herein. The Plaintiff is entitled to all relief necessary to make her whole.

## COUNT THREE
### Defamation
### (Against Defendant Edward Cauley in his individual capacity)

68. The Plaintiff hereby incorporates Paragraphs 1-66 above as if fully statedherein.

69. The Defendants published a false and defamatory statement or statements of and concerning the Plaintiff's job performance and encouraged others to do so as described in paragraph 39 of this complaint.

70. The Defendants (a) knew of the falsity of the statement or statements; or (b) acted in reckless disregard as to whether the statement was true or false.

71. Such defamatory statement or statements either caused the Plaintiff economic loss or were of the type that is actionable without proof of economic loss.

## COUNT FOUR
### Tortious Interference with Advantageous/Contractual Relationship
### (Against Defendant Edward Cauley in his individual capacity)

72. The Plaintiff hereby incorporates Paragraphs 1-71 above as if fully stated herein.

73. The Plaintiff, was employed pursuant to the terms of an express or implied contract with the employer as well as other express and implied contractual terms set forth in various policy and employment manuals and documents provided to and applicable to employees of the Town.

74. The Defendant knew about the contractual terms of employment and intentionally induced or persuaded the employer not to perform its obligations under the contract, policies and procedures and regulations that required the employee not be disciplined or terminated without just cause and in accord with progressive discipline.

75. The Defendant's interference with the employee's performance of and obligations under such contractual provisions, in addition to being intentional, was improper in motive or in means.

76. The Plaintiff was harmed by the Defendant's actions.

## COUNT FIVE
### WHISTLEBLOWER VIOLATIONS
### (Against Employer)

77. The Plaintiff hereby incorporates Paragraphs 1-75 above as if fully stated herein.

78. The conduct of Defendants, through their officers, officials, agents or employees, violated the Massachusetts' whistleblower law, Massachusetts General Laws Chapter 149, section 185.

79. Plaintiff made written complaints regarding Defendants' unlawful conduct, to her supervisors and superiors, which she reasonably believed to pose a risk to

public health, safety or the environment.

80. The Plaintiff was harmed by such conduct.

<u>COUNT SIX</u>
DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES
M.G.L. c. 12, Sec. 11H and I
(Against Defendant Edward Cauley in his individual capacity)

81. The Plaintiff hereby incorporates Paragraphs 1-79 above as if fully stated herein.

82. Plaintiff is entitled to freedom of speech as well as the equal protection of the laws under the Massachusetts Constitution as well as the First and Fourteenth Amendments of the United States Constitution, and due process of law protecting liberty and property under the Fifth and Fourteenth Amendments of the United States Constitution.

83. Defendant, acting under color of state law, retaliated against Plaintiff because of her complaints about the wrongful practices of government officials, and interfered by threats, intimidation or coercion, or attempted to interfere by threats, intimidation or coercion, with the exercise or enjoyment by Plaintiff of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth.

<u>COUNT SEVEN</u>
DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES
42.U.S.C. § 1983
(Against Defendant Edward Cauley in his individual capacity)

84. The Plaintiff hereby incorporates Paragraphs 1-82 above as if fully stated herein.

85. Plaintiff is entitled to freedom of speech as well as the equal protection of the laws under the Massachusetts Constitution as well as the First and Fourteenth Amendments of the United States Constitution, and is entitled to due process of law protecting liberty and property interests under the Fifth and Fourteenth Amendments of the United States Constitution.

86. Defendant, acting under color of state law, retaliated against Plaintiff because of complaints about the wrongful practices of government officials, interfered with the exercise or enjoyment by Plaintiff of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the Commonwealth.

## COUNT EIGHT
### Breach of Contract
### (Against Employer)

87. The Plaintiff hereby incorporates Paragraphs 1-85 above as if fully statedherein.

88. The Defendant Town of Southampton and the Plaintiff, were parties to a contract for the Plaintiff's employment with the Defendant.

89. The Defendant's wrongful conduct against the Plaintiff, includes, but is not limited to failing to follow the terms and conditions of employment, and arbitrarily causing the termination of Plaintiff.

90. The Defendant's actions constitute breach of contract against the Plaintiff including the contractual terms arising from the parties' conduct, breaches of the contractual terms contained in the contract and/or other employment documents relating to performance evaluation, compensation, and other benefits of employment.

91. As a direct and proximate result of the breach of contract the Plaintiff, has incurred substantial and continuing damages and the Plaintiff is entitled to all relief necessary to make her whole.

## COUNTNINE
### Breach of Covenant of Good Faith and Fair Dealing
### (Against Employer)

92. The Plaintiff hereby incorporates Paragraphs 1-90 above as if fully statedherein.

93. The contractual agreement between the Defendant, Town of Southampton and the Plaintiff, included inherent and implied covenants of good faith and fair dealing between the parties to the contract.

94. As a result of the conduct and actions of the Defendant, the covenant of good faith and fair dealing with the Plaintiff was breached.

95. As a direct and proximate result of the breach of its covenant of good faith and fair dealing, the Plaintiff has incurred substantial and continuing damages, including but not limited to those detailed herein. The Plaintiff is entitled to all relief necessary to make her whole.

## COUNT TEN
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### 42 U.S.C. Sec. 1985
### (Against Defendant Edward Cauley in his individual capacity)

96. Plaintiff incorporates by reference paragraphs 1 -94.

97. Defendant Edward Cauley conspired among other town agents and employees, including but not limited to Donna Whitely, Joyce Skypeck, Viki Moro, Robin Richard, John Martin, Art Lawrence, David McDougall, Liz Moulton and perhaps with others currently unknown to this Plaintiff, to deprive Plaintiff of equal protection of the laws and of equal privileges and immunities under the laws, as further set forth in Counts above.

98. The conspirators committed some acts in furtherance of the conspiracy, which included contacting Plaintiff and subjecting her to humiliation, threats, intimidation and coercion to discontinue her employment in violation of Town of Southampton policies, the General Laws of the Commonwealth of Massachusetts, regulations, and terms of her employment.

99. As a result of the conspiracy, Plaintiff was injured by Defendants in her person and property and deprived of having and exercising her rights and privileges as a citizen of the United States, as is more fully set forth in this complaint.

## COUNT ELEVEN
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### M.G.L. c. 12, Sec. 11H and I
### (Against Defendant Edward Cauley in his individual capacity)

100. Plaintiff incorporates by reference paragraphs 1 -98.

101. Defendant Edward Cauley conspired among other town agents and employees, including but not limited to Donna Whitely, Joyce Skypeck, Viki Moro, Robin Richard, John Martin, Art Lawrence, David McDougall, Liz Moulton and perhaps with others currently unknown to this Plaintiff, to deprive Plaintiff of equal protection of the laws and of equal privileges and immunities under the laws, as further set forth in Counts above.

102. The conspirators committed some acts in furtherance of the conspiracy, which included contacting Plaintiff and subjecting her to humiliation, threats, intimidation and coercion leading to discontinuance of her employment and such humiliation, threats and intimidation continued after the termination of her employment in violation of Town of Southampton policies, the General Laws and Constitution of the Commonwealth of Massachusetts, regulations, and terms of her employment.

103.    As a result of the conspiracy, Plaintiff was injured by Defendants in her person and property and deprived of having and exercising her rights and privileges as a citizen of the United States, as is more fully set forth in this complaint.

WHEREFORE, the Plaintiff demands Judgment enter:

(a) Directing the Defendants to pay compensatory damages in the amount to be proven at trial;
(b) Directing the Defendants to pay punitive damages in the amount to be proven at trial;
(c) Directing the Defendants to pay for Plaintiff's reasonable attorneys' fees incurred as a result of the Defendants' wrongdoing;
(d) Directing the Defendants to pay interest upon the judgment entered herein, and the costs of this action;
(e) Granting such other and further legal and equitable relief as this Court deems just and proper.

### JURYDEMAND

The Plaintiff demands trial by jury on all claims so triable.

By her Attorney,

Christine M. Pikula, Esq.
1350 Main Street – Suite 312
Springfield, MA 01103
BBO# 684292
Phone: 413-285-7121
Fax: 413-285-7442
atty.christine.pikula@gmail.com

Date: August 18, 2016