UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

REGINA SHEA-SULLIVAN,

    Plaintiff,

    v.

TOWN OF SOUTHAMPTON, SELECT
BOARD and EDWARD CAULEY,

    Defendants

Civil Action No. 16-12023-MGM

MEMORANDUM AND ORDER ON

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(Dkt. No. 22)

July 17, 2018

MASTROIANNI, U.S.D.J.

### I.     INTRODUCTION

Plaintiff, Regina Shea-Sullivan, filed an eleven count complaint in state court against Defendants—Town of Southampton ("Town"), the Town Select Board ("Board"), and Edward Cauley ("Cauley")—raising claims related to mistreatment she allegedly suffered while employed by the Town. The case was removed to this court by Defendants based on the existence of two claims brought under federal law. The court now considers Defendants' Motion for Summary Judgement (Dkt. No. 22).

## II.     JURISDICTION

Plaintiff's complaint includes two counts based on federal law: Count VII brought pursuant to 42 U.S.C. § 1983 and alleging deprivations of Plaintiff's First Amendment free speech rights, equal protection rights guaranteed by the Fourteenth Amendment, and rights to due process under the Fifth and Fourteenth Amendments; and Count X alleging a conspiracy to interfere with her civil rights in violation of 42 U.S.C. § 1985. Nine other counts assert claims solely under Massachusetts law. With respect to the claims based on federal law, this court has jurisdiction pursuant to 28 U.S.C. § 1331. As to the state law claims, because they arise out of the same facts relevant to the federal claims, this court has discretion as to whether to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1175 (1st Cir. 1995).

## III.     SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bellone v. Southwick-Tolland Regional School Dist.*, 748 F.3d 418, 422 (1st Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "[A] nonmovant can forestall summary judgment by 'present[ing] definite, competent evidence' demonstrating the existence of a genuine dispute about a material fact." *Murray v. Kindred Nursing Centers W. LLC*, 789 F.3d 20, 25 (1st Cir. 2015) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.' . . . 'A fact is material if it has the potential of determining the outcome of the litigation.'" *Patco Constr. Co. v. People's United Bank,* 684 F.3d 197, 206–07 (1st Cir. 2012) (quoting *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008)).

## IV. MATERIAL FACTS

Consistent with the summary judgment standard, the court summarizes the relevant facts presented by Plaintiff and supported by citations to the record.

A. <u>Events Prior to August 18, 2013</u>

In 2006, Plaintiff, Regina Shea-Sullivan, began working for the Town as an administrative assistant. Four days per week Plaintiff worked for the Board and one day per week she worked for the Town Highway Department. The individual defendant, Edward Cauley, was the Highway Superintendent and Plaintiff's supervisor when she performed work for the Town Highway Department. He was a Town employee for approximately thirty years. On four occasions between 2008 and 2010, Cauley subjected Plaintiff to unwanted sexual advances. At some point following the last incident, Plaintiff verbally reported Cauley's conduct to David Silvernail, the chief of police for the Town, and Jacquie Sears, then a member of the Board. Silvernail, in turn, told Michael Phelan, then chair of the Board, about the report. Sears also shared the allegations with Phelan and another member of the Board, Ann Roy. These conversations most likely occurred during 2011, but some may have happened as late as 2012 or 2013. Despite several town officials having knowledge of Plaintiff's allegations, no action was taken against Cauley and he continued to be Plaintiff's supervisor. Plaintiff has not alleged Cauley made any other unwanted sexual advances toward her. The evidence in the record indicates Cauley did not learn of Plaintiff's complaints regarding his conduct until, at the earliest, 2012 and possibly not not until after Plaintiff filed a written complaint with the Board in September of 2013. After learning of Plaintiff's complaint, Cauley called Plaintiff a "liar" when speaking to others about her allegations of unwanted sexual advances towards her.

The position of Town Administrator ("TA") became vacant in 2011. The Board appointed Plaintiff to the position of Interim TA for a period of twelve weeks. Subsequently the Select Board approved additional twelve-week periods, the last of which ended in early 2014. As Interim TA,

3

Plaintiff received no additional pay, performed new TA duties, and continued to perform her administrative duties, except that she ceased doing work for the Highway Department. Initially, the job description for the permanent TA position stated a college degree was required. In April of 2012, the Board voted to change the job description for the TA position to make a college degree suggested rather than mandatory. This change allowed Plaintiff, who does not have a college degree, to be considered for the permanent TA position.

In May of 2012, Cauley was elected to the Select Board, the five-member voting body that presides over Southampton. Shortly after being elected to the Board, Cauley voted to renew Plaintiff's appointment as Interim TA for an additional twelve weeks. In September and December of 2012, the Board voted for additional twelve week renewals of Plaintiff's interim position. Cauley voted against both of these extensions. Cauley also voted against giving Plaintiff a raise or providing her an administrative assistant to assist with her workload, and led an unsuccessful attempt to change the job description for the permanent TA position to again require a college degree.

During the spring of 2013, a screening committee considered applicants for the permanent TA position. Cauley was one of five members of the screening committee. The other four members of the committee included Silvernail and Sears and two other members who had previously been friendly with Cauley. On April 16, 2013, the Screening Committee announced five finalists. Plaintiff was not among the finalists, but, after a complaint from Sears, Plaintiff was interviewed for the TA position on May 5, 2013. A different candidate was offered the position. That candidate had both a Juris Doctor and Master of Business Administration degree, in addition to an undergraduate degree. He also had almost ten years of experience as a town manager and town administrator in four different towns.

B. <u>Events After August 18, 2013</u>

At an August 29, 2013 meeting the Select Board announced the candidate chosen for the TA position had declined the position. During the same meeting, the Select Board voted to add the requirement of a college degree back to the FA job description and to appoint a new screening commission. On September 24, 2013, Cauley again voted against a further twelve-week extension of Plaintiff's appointment as Interim TA. Despite Cauley's vote, the Select Board approved a further extension.

On September 30, 2013, Plaintiff filed a written complaint with the Board regarding Cauley's unwanted sexual advances between 2008 and 2010. The Town hired an independent investigator to investigate the complaint. Cauley ceased participating directly in the activities of the second screening committee, but he did not resign and continued to be included in group emails. He continued to be present in the Town offices and was observed to have a hostile relationship with Plaintiff. He also enjoyed a close relationship with four other women who worked in Town Hall, each of whom had negative interactions with Plaintiff, in at least one case, going back to shortly after Plaintiff was hired.

The second screening committee selected three finalists. Two of the finalists were women and all three had college degrees and either had or were close to having a graduate degree. Plaintiff was not selected as a finalist. One of the women was offered the permanent TA position. After she declined the position, the other woman, Heather Budrewicz was offered, and accepted, the position.

Plaintiff filed a second complaint with the Board on January 30, 2014. In her second complaint she alleged defamation and harassment by a co-worker, Joyce Skypeck, one of the four women Plaintiff identified as close with Cauley and hostile to her. Less than a week later, on February 3, 2014, Plaintiff filed a third complaint with the Select Board, asserting several town employees and members of the Select Board had harassed her or subjected her to unfair treatment in

5

retaliation for her complaint. She also complained that the Board bypassed her for the permanent TA position and implied the Board was retaliating against her for filing her first complaint. The Town engaged the same independent investigator who had investigated Plaintiff's first complaint to investigate these two new complaints.

Budrewicz began work as the permanent TA on March 3, 2014. By this time, Cauley had retired from his position as Highway Superintendent, but continued to serve on the Board. Plaintiff returned to an administrative assistant position, now reporting to Budrewicz. Later that month, the Board instructed Budrewicz to change the job description for the administrative assistant position and discussed whether the position was permanent or temporary. Budrewicz reassigned duties that Plaintiff had previously performed to another Town employee and informed Plaintiff that the hours for the administrative assistant position had been reduced by two hours per week. Though Plaintiff had been an administrative assistant in a permanent position before serving as the Interim TA, Budrewicz informed Plaintiff that her administrative assistant position was temporary and she would have to reapply for a permanent position. Instead of reapplying, Plaintiff resigned from her position at the end of March of 2014.

## V. DISCUSSION

Plaintiff's eleven count complaint includes two claims brought pursuant to federal law, each is alleged only against Defendant, Edward Cauley, in his individual capacity.[1] In Count VII, Plaintiff alleges Cauley violated her rights to free speech, equal protection, and due process and the violations are actionable pursuant to 42 U.S.C. § 1983. In Count X, Plaintiff alleges Cauley conspired with

---

[1] "Unlike an official-capacity § 1983 claim, in which the state itself is liable for damages, an individual-capacity § 1983 claim threatens the personal assets of the state officer only." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 108 (1st Cir. 2015). The difference between an official-capacity claim and an individual-capacity claim "is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. 21, 26 (1991).

6

other Town employees to deprive Plaintiff of equal protection under the laws in violation of 42 U.S.C. § 1985(3).

Claims brought under § 1983 and § 1985 share the statute of limitations of the forum state for personal injury claims. *Santana-Castro v. Toledo-Dávila*, 579 F.3d 109, 114 (1st Cir. 2009); *Rodríguez-García v. Municipality of Caguas*, 354 F.3d 91, 96 (1st Cir. 2004). In Massachusetts, the applicable statute of limitations is three years. MASS. GEN. LAWS ch. 260 §2A. While the limitations period is determined by state law, "the date of accrual, i.e. the date on which the limitation clock begins to tick, is determined by reference to federal law." *Muniz-Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir. 1994). "[C]laims generally accrue when the plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt." *Morán Vega v. Cruz Burgos,* 537 F.3d 14, 20 (1st Cir.2008) (internal quotations and citations omitted). "[U]nder the continuing violation doctrine[,] . . . a plaintiff can recover for injuries that occurred outside the statute of limitations under certain narrow conditions." *Pérez-Sánchez v. Pub. Bldg Auth.*, 531 F.3d 104, 107 (1st Cir. 2008). The doctrine makes it possible for a claimant to pursue claims that arise from the cumulative effect of a series of events that extend over an extemded period of time, but it "does not apply to 'discrete acts' of alleged discrimination that occur on a 'particular day.'" *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009). "[D]iscrete . . . acts which occur outside the limitations period are time-barred and no longer actionable." *Gorelik v. Costin*, 605 F.3d 118, 122 (1st Cir. 2010). Since Plaintiff filed this action on August 18, 2016, she must base her federal claims either on discrete actions that violated her right to free speech, due process, or equal protection that occurred on or after August 18, 2013 or she must allege that at least one instance in a series of conduct that only violated her rights when taken cumulatively occurred on or after August 18, 2013.

A. Count VII - § 1983

A claim under § 1983 has two "essential elements." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). First, "a defendant must have acted under color of state law" and their actions "must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Id.* Second, the plaintiff must "show 'that the [defendant's] conduct was the cause in fact of the alleged deprivation.'" *Id.* (quoting *Rodríguez–Cirilo v. García,* 115 F.3d 50, 52 (1st Cir.1997)). Plaintiff has not alleged a conspiracy when pleading her § 1983 claim, so the court considers only conduct actually attributed to Cauley when determining whether Plaintiff has alleged actionable conduct occurred within the limitations period.

Plaintiff has not identified the specific actions taken by Cauley, individually, either as a Town employee or member of the Board that deprived her of her rights, leaving it up to the court to piece together the factual basis for her § 1983 claim. Plaintiff has alleged four incidents of sexual harassment, but Plaintiff cannot rely on those incidents as grounds for her §1983 claim. The last of these incidents occurred in 2010, approximately six years before Plaintiff filed her suit, well outside the applicable three year limitations period. Plaintiff acknowledges that she cannot bring a claim based on those incidents. Instead, she bases her claim on other actions by Cauley, while acting under color of state law, which occurred after she complained about the earlier incidents of sexual harassment and which allegedly deprived her of one or more of her rights to free speech, due process, and equal protection.

The conduct Plaintiff attributes to Cauley and labels retaliatory, such as calling Plaintiff a "liar" to other Town employees, did not cause a deprivation of Plaintiff's rights to free speech, equal protection, or due process. Instead, the harms alleged by Plaintiff resulted from actions taken by the Board as a whole, specifically its response to her complaints about Cauley's sexual harassment and its decisions regarding hiring and pay for Town employees, including Plaintiff. Indeed, as Cauley was

8

one of five members of the Board, Plaintiff's decision to assert her § 1983 claim against only Cauley leads this court to ask whether Cauley, standing alone, can be considered responsible for actions of the five-member board or, put another way, whether a vote cast for malicious reasons violates a plaintiff's rights even if a single vote was not dispositive as to the outcome.

Defendants argue, without citing authority, that Cauley cannot be held individually liable for official actions taken by the Board. Plaintiff responds with a citation to a First Circuit case ruling liability can attach to a city where an employee with "final authority" takes an unconstitutional action. *Small v. Inhabitants of City of Belfast*, 796 F.2d 544 (1st Cir. 1986). However, Plaintiff has not asserted a § 1983 claim against the Town based on the action taken by the Board, which was the "final authority" as to matters of Town management. The "final authority" analysis in *Small* does not speak to the question of whether Cauley, in his individual capacity, can be held liable for deprivations caused by Board actions, as opposed to those caused by his individual conduct.

Though not directly on point, the Seventh and Eleventh Circuits have both held "there can be no municipal liability for the isolated acts of only one member of a multimember board." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 469 (7th Cir. 2010) (citing *Mason v. Vill. Of El Portal,* 240 F.3d 337, 1340 (11th Cir. 2001). In the absence of authority to the contrary, the court is persuaded that just as an elected board is not liable for the malice of a single member, a single member cannot be liable for the official actions taken by the board following a vote of all members. For these reasons, the court concludes Cauley is entitled to summary judgment in his favor as to Plaintiff's § 1983 claim.

B. Count X - § 1985

Claims brought under § 1985(3) require "(1) 'a conspiracy,' (2) 'a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws,' (3) 'an overt act in furtherance of the conspiracy,' and, lastly, (4) either (a) an 'injury to person or property' or (b) 'a deprivation of a

9

constitutionally protected right.'" *Soto-Padró v. Pub. Bldgs. Auth.*, 675 F.3d 1, 4 (1st Cir. 2012) (quoting *Pérez–Sánchez v. Pub. Bldg. Auth.,* 531 F.3d 104, 107 (1st Cir.2008)). With respect to the second element, "[i]t has long been established that a claim under § 1985(3) requires 'some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Pérez–Sánchez*, 531 F.3d at 107. This requirement is necessary to prevent §1985(3) from expanding into a general federal tort law. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, (1993).

Plaintiff asserts throughout her filings that a conspiracy existed to discriminate against her on the basis of her sex, however the only discriminatory conduct she has alleged that was tied to her sex were Cauley's unwanted sexual advances between 2008 and 2010, well outside the actionable period. On the other hand, Plaintiff describes the motivating animus of the later conspiracy as a desire to retaliate against her because she complained about Cauley's sexual harassment and also other types of misconduct by other Town employees. Animus based on an employee's conduct, as opposed to the employee's membership in a class defined by an immutable characteristic does not satisfy the § 1985(3) animus requirement. *Aulson v. Blanchard*, 83 F.3d 1, 5–6 (1st Cir. 1996) (explaining that for purposes of §1985(3) "a class must be more than just a group of persons who bear the brunt of the same allegedly tortious behavior"); *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987) (ruling group of employees targeted by employer did "not possess discrete, insular and immutable characteristics" and, therefore, did not constitute a class for purposes of §1985(3)); *Taylor iv. Brighton Corp.*, 616 F.2d 256, 266 (6th Cir. 1980) (ruling "a group defined by conduct . . . is not a class cognizable under § 1985(3)"); *see also Underfer v. Univ. of Toledo*, 36 F. App'x 831, 833–34 (6th Cir. 2002) (holding that animus against a "class of one" does not satisfy the class-based animus requirement of § 1985(3)). The facts in the record are not sufficient to support a claim that there was a conspiracy that targeted Plaintiff out of sex-based animus, as opposed to retaliatory animus related to her complaints about the conduct of Cauley and others. As the animus required

for § 1985 has been narrowly interpreted to apply only where a conspiracy targets a person based on immutable characteristics like race or sex, the court concludes she cannot state a claim pursuant to §1985(3) and summary judgment should enter in favor of Defendants as to Count X.

## VI. CONCLUSION

For the Foregoing reasons, Defendants' Motion for Summary Judgment as to Counts VII and X of Plaintiff's complaint is hereby GRANTED. Having disposed of the only federal claims in the case, the court DENIES without prejudice summary judgment on all other counts and remands those counts to state court for further proceedings.

It is So Ordered.

                                                                                                          _/s/ Mark G. Mastroianni_
                                                                                                          MARK G. MASTROIANNI
                                                                                                          United States District Judge